After the hearing judge James delivered the following decree:
In the investigation of the question arising out of the receipts alleged to have been given by the complainants-in full for all their claims and interest in the real, as well ns the personal estate, the court will consider first, whether sufficient appears upon the face of them to carry boih real and personal estate ? And secondly, if they are *62 no{; sufficient for that purpose, whether parol evidence ¿(ui bo admitted to supply parts of them which were intended to be inserted as is alleged, but were mistaken or misapprehended by the drawers of them.
1st point. As to the construction. And as the receipt from Gilbert Dinkins was stated by defendant’s counsel, to be the most full and complete, we will first consider' that. It is as follows: “ Received 14th March, 1794* from Barton Harris, administrator of the estate of John Harris, his note of hand, for four likely cows and calves, which when paid, will be in full for my c lairn against the said estate, as heir and son-in-law to the said Job» Harris» deceased, and all other demands whatever, except a pair of side lines, borrowed by me, of Mr. Hooper, for the usd of the estate.”
The most comprehensive words in it, are, “ will he in 'full for my claim against the estate, and all other demands whatever.” Now if these words were to he taken in the. strict legal sense, unconnected with other words, there could be no doubt as contended by defendant’s counsel but that they would carry the real estate also. Th<v words ie in full of the estate,” signifying all that the re-leasor could possibly grant or was entitled to. Bui there are other words in the release, which must defeat their operation in the extent contended for; these arc, « Received from Barton Harris,” &c. as administrator of the estate; it is plain that Barton Harris the rclcs-see, had no power over the lands to do any legal and efficient act respecting them. Therefore the receipt must be confined to the extent of his powers as administrator, and in a strict legal' sense cannot be construed to include the real estate. The court, however, thinks the receipt from Joseph Brown more full and comprehensive, than the one from Gilbert Dinkins, • The words are “ Received, September 3d, 1798, Barton Harris twenty-five pounds sterling, it being in full for my share of the estate of John Harris, deceased, which I became entitled to in consequence of my marriage with Sarah Harris. Witness my hand and seal.
Joseph BeownJ1
*63 Here it is to be observed that the release is not taken from tlie defendant as administrator, and that it is “ in MI of bis share of the estate of John Harris, deceased, to which he became entitled in right of his wife/’ in a strict legal sense, therefore, this receipt would seem to include the real estate. But there are two circumstances ■which induce the court to think that the lands were not in the contemplation of the parties at the time of making tiie release. The first is to be collected from the face of the receipt, and, indeed, is applicable to both of them, it is the great inadequacy of the price contained in them. The second arises from matter extraneous, and is the meaning generally annexed to the word estate in common parlance. Inadequacy of price has not, indeed, been considered in equity, as a sufficient ground to set aside a contract, which otherwise has been fairly made ; but where a contract is uncertain as. to its extent, and may include one or the other of two subjects, there inadequacy of price is a strong ground to conclude that men ,of common sense would ever intend to part from the whole of their rights to both where the price was grossly inadequate. The lands in question contain 450 acres, and wore, as the evidence states, never worth less than seven shillings per aero, and are now said to be worth ten dollars per acre. Then it appears evident that the price contained in the receipts can bear no proportion to the real value of the lands and personalty both, at any given period. Those prices, however, do appear to ho proportioned to the personalty alone, which each complainant was entitled to, and therefore it may be reasonably concluded that the receipts were intended to extend no further. The other circumstance weighing somewhat with the court, arises from the use of the word estate, in common parlance $ and this, it is pretty well known, is not fixed and technical, but may mean real'or personal estate, or both together. These instruments were not drawn by legal men, and since, if they were to be extended to both real and personal estate, it would produce a gross inequality in the distribution of the property, it appears to bo most equitable to confine iheir *64 construction to one ov the otiier. There is another rea'-son why it,should be confined to personal estate : The povvei’s vested ixx the relessee, by law as administrator,, relate to the personalty, and it is not to bo presumed that lie was acting beyond the. authority which was vested in him. In this point of view, whether the capacity in which he acted be expressed in'thebody of the receipt or not, it can make little difference, the presumption still is that ho acted as administrator. As to the form of these receipts, the court will observe, that although no exact form of words would have been necessary to carry the real estate,' yet it appears the receipts want substance. Had tiiey been made to defendant as heir, or contained flic words real and personal estate,' then there would have been little doubt.
Next as to the second question — whether parol evidence can be admitted to supply parts of these receipts which were mistaken or misapprehended by the drawers of them? On this ground the court is of opinion, that, in certain cases where the object is not to add to or vary the contract, such evidence might be admitted, but if the-evidence is to prove a mistake in the drawers, to avoid that perjury which the statute is so careful to prevent, it ought to be the highest the nature of the case would admit of, and confined to the drawers themselves or some other persons present when the instructions were given. It ought not to rest upon the vague declaration of the parties concerning the agreement that is to ho made, or has been ¡nade in writing," nor does it seem that it .should depend upon the vague recollection of witnesses, without some memorandum in writing. For to admit evidence so uncertain would be to encourage that perjury which the statute would guard so carefully against. Mr. Hor-an, one of the drawers, does indeed state, “ that he was under aix impression, that the claim to the real estate was included 5 but he'also states, that he has no particular recollection of the understanding between the parties.” This evidence thei’eforc is not conclusive, and Mr. Bay. who drew the other instrument, Isas xxot been examined, although it appears to be essential. For these rea’sonit *65 therefore the court is of opinion, that the parol evidence now offered should not bo admitted, as tending to vary the contract, and not such as is admitted by law. The court likwisc thinks that defendant should be considered as a trustee for the complainants of the abbot tract, and that complainants are still entitled to their shares respectively of the other lands, notwithstanding the receipt. Therefore upon the complainant’s paying up the defendant one half the monies laid out by him in paying for the •abbot tract with interest, let him make them titles tí» their respective portions of the same in right of their wives, and also for the other lands: and let him pay up their proportions of the rents and profits of the whole lands — and also let it bo referred to the commissioners to report the sums to be paid by each respectively, and •to approve of said titles.
W.